**IN THE COURT OF APPEALS OF IOWA**

No. 17-0392
Filed July 6, 2017

**IN THE INTEREST OF N.F. and Z.M.,**
**Minor Children,**

**A.G., Mother,**
    Appellant.

_____

Appeal from the Iowa District Court for Polk County, Joseph W. Seidlin, District Associate Judge.

A mother appeals the termination of her parental rights to two children. **AFFIRMED.**

Chira L. Corwin of Corwin Law Firm L.L.C., Des Moines, for appellant mother.

Thomas J. Miller, Attorney General, and Ana Dixit, Assistant Attorney General, for appellee State.

Brent M. Pattison of Drake Legal Clinic, Des Moines, guardian ad litem for minor children.

Considered by Vaitheswaran, P.J., and Tabor and Mullins, JJ.

**TABOR, Judge.**

A mother, Alexis, appeals from a juvenile court order terminating her parental rights to two children—N.F., born in 2012, and Z.M., born in 2013.[1] Alexis challenges the sufficiency of the State's proof of the statutory grounds for termination. Alternatively, she argues the juvenile court should have granted her additional time to achieve reunification with her children. After independently reviewing the record,[2] we find clear and convincing evidence to support the findings of the juvenile court.

## I.      Facts and Prior Proceedings

These children came to the attention of the juvenile court in November 2015, when Alexis's youngest child, I.G., tested positive for amphetamine and methamphetamine at his birth. N.F. and Z.M. tested positive for amphetamine and methamphetamine as well, and Z.M. tested positive for cannabinoids. Alexis consented to the removal of her children, and the court ordered the children to be placed in foster care. The Iowa Department of Human Services (DHS) placed N.F. and Z.M. in the same foster home and I.G. in another.

Alexis, who had an extensive history of substance abuse, sought treatment in November 2015, shortly after the removal of her children. After completing a substance-abuse evaluation at the House of Mercy, she began

---

[1] The court also terminated Alexis's parental rights to her youngest son, I.G. Alexis does not appeal the termination of her parental rights to I.G.

[2] We review child-welfare cases de novo. *See In re M.W.*, 876 N.W.2d 212, 219 (Iowa 2016). We are not bound by the fact findings of the juvenile court, but we do give them weight, particularly regarding the credibility of witnesses. *See id.* "We will uphold an order terminating parental rights if there is clear and convincing evidence of grounds for termination under Iowa Code section 232.116." *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010). We find evidence to be "clear and convincing" when there are no "serious or substantial doubts as to the correctness [of] conclusions of law drawn from the evidence." *See M.W.*, 876 N.W.2d at 219 (alteration in original) (citation omitted).

inpatient treatment on December 3, 2015. Alexis left treatment six days later and lost contact with the Family Safety, Risk, and Permanency (FSRP) provider.

In the next twelve months, Alexis completed three more substance-abuse evaluations. She participated in treatment only sporadically. Alexis completed her fourth evaluation in August 2016, around the time she learned she was pregnant. The resulting report revealed the extent of Alexis's substance-abuse history:

> Alexis reported that she drank alcohol for the first time at age 10, and reported that she typically drinks approximately six beers every three or four days. She reported that in the last thirty days she has consumed alcohol on most days. . . .
> Alexis reported that she began using marijuana at age 14. She reported that she uses the substance about two-three days per week, smoking about four grams every thirty days.
> Alexis reported that she first tried methamphetamine when she was 11 years old, and that she has snorted, smoked, and injected the substance since she began using it. She reported that she typically uses about 1/4 g daily, and reported her last use as two days ago when she smoked 3.5 grams. She reported that she attempted to inject the substance two days ago, but was unsuccessful . . . .

Alexis began the recommended inpatient treatment program on September 14 but, at her request, was transferred to outpatient treatment on September 26. She moved in with her mother—who, according to Alexis, also abused drugs— and then with her unborn child's father, whom she described as emotionally abusive and a drug user. She discharged from the treatment program on November 16 with the recommendation for a lower level of treatment.

On November 17, at a joint permanency and termination hearing, Alexis testified she had not used marijuana or methamphetamine for thirty days, the longest she had abstained from use of those substances since her children were

removed. But she admitted using methamphetamine while pregnant and in treatment, explaining she started smoking the drug, rather than injecting it, upon learning of the pregnancy.

Alexis also failed to fully address her mental-health issues. Despite the DHS recommendation to engage in therapy, it took her more than a year to schedule an appointment. In June 2016, Alexis completed a psychiatric evaluation. The evaluation revealed a diagnosis of recurrent major depressive disorder, which was currently active with a moderately severe episode, as well as posttraumatic stress disorder and severe methamphetamine abuse. Alexis received prescriptions for depression and anti-anxiety medications, but she did not consistently take them as prescribed. Nor did she follow up with any recommended treatment.

Finally, Alexis's inconsistent contact with her children was a concern throughout the case. The DHS initially offered Alexis supervised visitation two to three times per week, but her inconsistency resulted in a reduction in visitation to once a week. Social workers reported Alexis attended less than one-half of her scheduled visits, and at one point, more than a month passed without any contact between Alexis and her children. When Alexis did attend visits, she was often unprepared and failed to provide for their basic needs, such as diapers or meals.

As a result of Alexis's irregular visits, N.F. began experiencing emotional problems. N.F., who was then four years old, exhibited frustration, anxiety, and negative behaviors related to her mother's absences. N.F. began therapy to

address these issues.  Despite the therapist's request for Alexis to be involved in the therapy sessions, she participated only twice in over a year.

Z.M. has special needs. Specialists at Blank Children's Hospital diagnosed him with autism-spectrum disorder after his removal from his mother's custody.  He is mostly nonverbal and does not communicate his needs.  He began receiving services, including speech therapy.  Alexis did not follow his care and was unfamiliar with the extent of his diagnosis or his progress.

The State filed a petition to terminate Alexis's parental rights on October 16, 2016.  The juvenile court held a joint permanency and termination hearing on November 17.[3]  In a detailed order issued on December 21, 2016, the court found clear and convincing evidence to terminate Alexis's rights with respect to Z.M. under Iowa Code section 232.116(1)(h) (2016)[4].  The court explained:

> Alexis is not in position to have the children in her care at this time. She has not yet taken adequate steps to permanently address her substance abuse, mental health, and stable living issues, and she has not maintained . . . her bond with these children.  This remains true in spite of just under a year of services offered to address these very issues.

But with respect to N.F., the court found the State's proof lacking under 232.116(1)(f)[5] because she had been removed from Alexis's custody one day

---

[3] The court terminated the rights of the children's fathers at this hearing.  They are not parties to this appeal.
[4] Subsection (h) requires proof the child (1) is three years old or younger; (2) has previously been adjudicated a child in need of assistance (CINA); (3) has been removed from the parent's custody for at least six of the past twelve months, or the last six consecutive months and any trial period at home has been under thirty days; and (4) cannot be returned to the parent's custody at the present time.  Iowa Code § 232.116(1)(h).
[5] Subsection (f) requires proof the child (1) is at least four years old; (2) has previously been adjudicated a CINA; (3) has been removed from the parent's custody for at least

short of the statutorily required time period. *See* Iowa Code § 232.116(1)(f)(3). The court also found grounds for termination had not been established under section 232.116(1)(*l*),[6] reasoning that after Alexis's diagnosis of severe amphetamine use disorder, she completed treatment.

The court reasoned it was not in the best interests of the children to terminate Alexis's parental rights with respect to Z.M. and I.G. when her parental rights to N.F. would remain intact. Accordingly, the court directed the State to file another petition to terminate Alexis's parental rights within thirty days. The State did so on January 5, 2017.

Following the November 2016 hearing, Alexis continued to use drugs. On January 19, 2017, she obtained another substance-abuse evaluation at the House of Mercy, which found she had severe amphetamine use disorder and severe cannabis use disorder. Alexis reported she had last used methamphetamine and marijuana two days before the evaluation. She entered residential treatment.

On February 15, the juvenile court held a second termination hearing and found clear and convincing evidence to terminate Alexis's parental rights to N.F. and Z.M. under Iowa Code section 232.116(1)(f) and (h), respectively. In addition, the court found clear and convincing evidence existed to terminate

---

twelve of the past eighteen months, or the last twelve consecutive months and any trial period at home has been under thirty days; and (4) cannot be returned to the parent's custody at the present time. Iowa Code § 232.116(1)(f).

[6] Subsection (*l*) requires proof (1) the child has been adjudicated CINA and removed from the parent's custody; (2) the parent has a severe substance abuse problem and presents a danger to self or others; and (3) the parent's prognosis indicates the child will not be able to be returned to the parent's custody within a reasonable period of time. Iowa Code § 232.116(1)(*l*).

Alexis's parental rights to both children under 232.116(1)(*l*), reasoning Alexis's substance-abuse disorder put herself and others at risk.

Alexis appeals the termination order.

## II.    Analysis

**Statutory Grounds.**    To terminate parental rights under Iowa Code sections 232.116(1)(f) and (h), the State must prove, among other things, the children cannot be returned to the parent's custody at the present time.  *See* Iowa Code § 232.116(1)(f)(4), (h)(4).  "At the present time" refers to the date of the termination hearing.  *See In re A.M.*, 843 N.W.2d 100, 111 (Iowa 2014). Alexis contests only this requirement, asserting, because she was living at the House of Mercy—which allows children to be in the care of their treating parent— at the time of the termination hearing, the children could have been returned to her care.

We find clear and convincing evidence the children could not be safely returned to Alexis's care.  At the first termination hearing in November 2016, Alexis acknowledged she was unable to have the children in her custody.  She also recognized her inconsistent contact negatively impacted the children.  But in the three months following that hearing, Alexis made no significant effort to change her behavior.  *See M.W.*, 876 N.W.2d at 223 (holding mother's lack of consideration for the impact her decisions had on children was a factor supporting termination).  In December 2016, she unsuccessfully discharged from outpatient treatment for lack of attendance.  And at her fifth substance-abuse evaluation in January 2017, Alexis indicated she had used methamphetamine

three times in the previous month. The same evaluation revealed she had never stopped using marijuana and never attempted to cut down or control her use.

As the juvenile court pointed out, Alexis's admittance into the House of Mercy was just a few weeks before the second termination hearing. "Iowa courts look skeptically at 'last-minute' attempts to address longstanding issues, finding them inadequate to preclude termination of parental rights." *In re A.D.*, No. 15-1508, 2016 WL 902953, at *2 (Iowa Ct. App. Mar. 9, 2016) (citing *In re C.B.*, 611 N.W.2d 489, 494 (Iowa 2000)). Alexis's "last-minute" attempt to address her longstanding substance-abuse issues, more than a year after her children were removed, is inadequate to support the conclusion her parental rights should be preserved, particularly considering her persistent inconsistency in visitation and mental-health treatment throughout the case. *See C.B.*, 611 N.W.2d at 495 ("A parent cannot wait until the eve of termination, after the statutory time periods for reunification have expired, to begin to express an interest in parenting.").

Because Alexis did not take meaningful steps to address her substance-abuse and mental-health issues, we agree with the juvenile court that clear and convincing evidence supports the conclusion the children could not be returned to her care at the time of the termination hearing.[7]

---

[7] Finding clear and convincing evidence supporting the statutory grounds for termination under Iowa Code section 232.116(1)(f)(4) and (h)(4), we do not consider her argument regarding section 232.116(1)(*l*). *D.W.*, 791 N.W.2d at 707 ("On appeal, we may affirm the juvenile court's termination order on any ground that we find supported by clear and convincing evidence.").

On appeal, Alexis also notes she disagrees with the juvenile court's finding "she has not maintained her bond with this child." To the extent this is an argument the juvenile court should have declined to terminate Alexis's parental rights because termination would not be in the children's best interests, *see* Iowa Code § 232.116(2), or because of the strength of the parent-child bond, *see id.* § 232.116(3)(c), we reject her argument. At the hearing, a DHS worker testified Alexis's lack of engagement and

**Additional Time.** Alternatively, Alexis argues the juvenile court erred by not granting her additional time for reunification efforts. To grant a six-month extension under Iowa Code section 232.102, the court must determine the need for removal will no longer exist at the end of that time. *In re A.A.G.*, 708 N.W.2d 85, 89 (Iowa Ct. App. 2005). We are unable to make such a determination here. Alexis had more than a year to address the issues identified at the start of the CINA proceedings. Her repeated failure to complete recommended substance-abuse and mental-health treatment, along with her inability to abstain from drug use, indicate it is doubtful she will be able to provide a stable home at the end of the requested six-month extension. *See In re A.B.*, 815 N.W.2d 764, 778 (Iowa 2012) (finding "evidence of the parent's past performance . . . may be indicative of the quality of the future care that parent is capable of providing" (quoting *C.B.*, 611 N.W.2d at 495)). N.F.'s difficulty in dealing with Alexis's inconsistency demonstrates her need for permanency. Z.M.'s need is even greater, given his autism diagnosis. Alexis's children cannot be deprived of permanency based on her unrealistic hope they will someday be able to return to her care. *See In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010). Additional time was not justified here.

Accordingly, we affirm the juvenile court order terminating Alexis's parental rights.

**AFFIRMED.**

---

inconsistency in visitation diminished her relationship with the children. We agree with the juvenile court's determination, Alexis did not maintain a close tie with her children.